## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
Case No.: 0:19-cv-61700-FAM

MARIO ANIBAL RIVERA, on behalf of
himself and others similarly situated,

      Plaintiff,

v.

SUPERIOR     RESTORATION     &
CLEANING SERVICES, INC., a Florida
corporation,   and  AHARON  ATZMI,
individually,

      Defendants.

_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendants, SUPERIOR RESTORATION & CLEANING SERVICES, INC. ("SUPERIOR RESTORATION") and AHARON ATZMI, by and through undersigned counsel, hereby file their Motion for Summary Judgment and state as follows:

### SUMMARY OF ARGUMENT

Defendants are entitled to summary judgment in their favor and against the Plaintiff as a matter of law on Plaintiff's alleged unpaid overtime claim because Plaintiff was paid properly, including at overtime rate, for all hours he reported and acknowledged as worked hours. Further, as to Plaintiff's unlawful retaliation claim under the FLSA, Plaintiff has not come forward with a prima facie case of unlawful retaliation and even if he did, the Defendants have articulated, and Plaintiff has admitted to a non-retaliatory reason given for his termination. Finally, regarding Plaintiff's claims under 26 U.S.C §7434, the uncontroverted evidence shows that the IRS Forms 1099 that were provided to Plaintiff for the years 2018 and 2019 matched the amounts he was

1

paid (with the exception of a *de minimus* $0.25 difference for 2019). Thus, the Defendants are entitled to summary judgment on this claim as well.

## STATEMENT OF MATERIAL UNDISPUTED FACTS

Pursuant to S.D. Fla. L.R. 56.1(a), Defendants are filing simultaneously a separate Statement of Material Undisputed Facts ("SMUF") in support of this motion, which is incorporated herein by reference.

## LEGAL ARGUMENT

### Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See, *Fed. R. Civ. P. 56(c)*. The moving party bears the burden of demonstrating the lack of any material dispute, after which the nonmoving party must show the existence of a genuine issue for trial if it is to avoid summary judgment. See, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-87, (1986). Despite the presumptions in favor of the non-moving party, the court must be mindful of the purpose of Rule 56 which is to eliminate the needless delay and expense to the parties and to the court occasioned by an unnecessary trial. See, *Fuentes v. CAI Int'l, Inc.*, 728 F. Supp. 2d 1347 (S.D. Fla. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986)). Consequently, the non-moving party cannot merely rest upon his bare assertions, conclusory allegations, surmises or conjectures. *Id*. The non-moving party is required to "go beyond the pleadings" and present competent evidence designating "'specific facts showing that there is a genuine issue for trial.'" See, *Celotex Corp.* Id. at 324. "The mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury

could reasonably find for the [non-moving party]." See, *Johnson v. Bd. of Regents*, 263 F.3d 1234 (11th Cir. Ga. 2001). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment -- there must be no genuine issue of material fact. See, *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). An issue is not genuine if it is unsupported by the evidence or created by evidence that is "merely colorable" or not "significantly probative." *Id*. at 249-50. Similarly, a fact is considered material only if it is identified by the substantive law as an essential element of the non-moving party's case. *Id*. at 248. "[U]nless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party, "summary judgment shall be rendered. *Id*. at 249. Stated differently, "[w]here the record taken as a while could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." See, *Matsushita*, Id. at 587.

Finally, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." See, *Baca v. Fla. Roofing Solutions, Inc.*, 2013 U.S. Dist. LEXIS 38563 (S.D. Fla. Mar. 20, 2013) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Carson v. J Curt Inc.*, 1:06-CV-00098-MP-AK, 2007 U.S. Dist. LEXIS 11903, 2007 WL 601925, at *2 (N.D. Fla. Feb. 21, 2007) (finding that, where the defendant has produced time records, plaintiff could not rely only on his own uncorroborated testimony to defeat a motion for summary judgment)). "A court is not required to allow a case to go to trial 'when the inferences that are drawn from the evidence, and upon which the non-movant relies are 'implausible.'" *Id*. at *4 (citing *Mize v. Jefferson City Board of Education*, 93 F.3d 739, 743 (11th Cir. 1996))

a.      <u>Plaintiff's Unpaid Overtime Claim</u>

    1.      <u>Plaintiff Was Paid Properly for All Hours He Worked</u>

        A.  <u>The Proper Legal Framework</u>

"Under the FLSA, an employer may not employ his employee for longer than forty hours per week unless the employee receives overtime compensation." See, *Estrada v. FTS USA, LLC*, No. 1:14-CV-23388-KMM, 2016 U.S. Dist. LEXIS 146819, at *6 (S.D. Fla. Oct. 24, 2016) (citing *Allen v. Bd. Of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007)) "A person is employed if he or she is suffered or permitted to work." *Id.* "If the employer knows or has reason to know that the employee continues to work beyond the forty hours, the additional hours must be counted." *Id.*

"An employee 'has the burden of proving that he performed work for which he was not properly compensated.'" See, *Arroyave v. Rossi*, 296 F. App'x 835, 835 (11th Cir. 2008) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946)) "When the employer has kept accurate records detailing the employee's hours and compensation rate, the employee discharges his burden by securing the production of those records." *Estrada,* Id. at *6-7. "However, if the employer's records are inaccurate or inadequate, the court should apply a relaxed burden-shifting scheme." *Id.* "In such a situation, an employee has 'carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Id.* (citing *Allen*, 495 F.3d at 1316) "The burden then shifts to the employer, who must submit evidence of either the precise amount of work the employee performed or 'evidence to negate the reasonableness of the inference to be drawn from the employee's evidence.'" *Id.*

Here, as shown in ***Composite Exhibit B***, Defendants have produced time (including daily clock-ins and clock-outs) that were generated based on the time reporting of the Plaintiff (by text or on a note) and corresponding pay records for the Plaintiff, each of which was signed by the Plaintiff contemporaneously when created.

### B.  Defendants Maintained Required Records for Plaintiff

29 C.F.R. §516.2, in relevant parts, requires that following information and records to be kept by the employer:

**(a)** Items required.

**(5)** Time of day and day of week on which the employee's workweek begins (or for employees employed under section 7(k) of the Act, the starting time and length of each employee's work period). If the employee is part of a workforce or employed in or by an establishment all of whose workers have a workweek beginning at the same time on the same day, a single notation of the time of the day and beginning day of the workweek for the whole workforce or establishment will suffice,

**(6)**    **(i)** Regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the Act,

**(ii)** explain basis of pay by indicating the monetary amount paid on a per hour, per day, per week, per piece, commission on sales, or other basis, and

**(iii)** the amount and nature of each payment which, pursuant to section 7(e) of the Act, is excluded from the "regular rate" (these records may be in the form of vouchers or other payment data),

**(7)** Hours worked each workday and total hours worked each workweek (for purposes of this section, a "workday" is any fixed period of 24 consecutive hours and a "workweek" is any fixed and regularly recurring period of 7 consecutive workdays),

**(8)** Total daily or weekly straight-time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation,

**(9)** Total premium pay for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under paragraph (a)(8) of this section,

**(10)** Total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments. Also, in individual employee records, the dates, amounts, and nature of the items which make up the total additions and deductions,

**(11)** Total wages paid each pay period,

**(12)** Date of payment and the pay period covered by payment.

See, 29 C.F.R. §516.2.

Here, the records kept by the Defendants for Plaintiff's work include all the information required by 29 C.F.R. §516.2.

### C.  Defendants Paid Plaintiff for All Hours He Reported

Plaintiff was paid an hourly rate of $20.00 throughout his employment with the Defendants. (***Plaintiff's Depo Transcript***, 64:16-20) Thus, under the FLSA, Plaintiff was entitled to receive $30.00 for each hour over forty in any workweek. Plaintiff submitted his hours by text messages or on a note. See, Declaration of Aharon Atzmi – ***Exhibit A***. As shown in ***Composite Exhibit B***, Plaintiff signed for his daily time in and time out every week (See also, ***Plaintiff's Depo Transcript***, 125:17-19); Plaintiff initialed, separately, his total hours worked every week (See also, ***Plaintiff's Depo Transcript***, 124:10-20); initialed an acknowledgement that the hours for which he signed were accurate, every week (See also, ***Plaintiff's Depo Transcript***, 124:21 – 125:3); and signed that he received payment in full (along with the check number), every week (See also, ***Plaintiff's Depo Transcript***, 125:20 – 126:3). Plaintiff signed the time sheets after seeing the calculations and agreeing with the calculations. (***Plaintiff's Depo Transcript***, 133:9-11). Every week, the payment that Plaintiff received included overtime pay at the hourly rate of $30.00, for every overtime hour worked. See, ***Composite Exhibit B*** – summarized in the table below:

| Week | Hours Worked | OT Worked | Wages Due | Check No. | Check Amount |
|------|--------------|-----------|-----------|-----------|--------------|
| 7/29/2018 | 50 | 10 | (40 x $20.00) + (10 x $30.00) = $1,100.00 | 3127 | $1,100.00 |
| 8/5/2018 | 20.5 | 0 | 20.5 x $20.00 = $410.00 | 3133 | $410.00 |
| 8/12/2018 | 45 | 5 | (40 x $20.00) + (5 x $30.00) = $950.00 | 3145 | $950.00 |
| 8/19/2018 | 23.25 | 0 | 23.25 x $20.00 = $465.00 | 3159 | $465.00 |
| 8/26/2018 | 26.25 | 0 | 26.25 x $20.00 = $525.00 | 3165 | $551.25 |
| 9/2/2018 | 42 | 2 | (40 x $20.00) + (2 x $30.00) = $860.00 | 3187 | $875.00 |
| 9/9/2018 | 23.75 | 0 | 23.75 x $20.00 = $475.00 | 3194 | $475.00 |

| 9/16/2018 | 34 | 0 | 34.00 x $20.00 = $680.00 | 3189 | $680.00 |
|---|---|---|---|---|---|
| 9/23/2018 | | | Paid to Alex Amigo at Plaintiff's request | | |
| 9/30/2018 | 10 | 0 | Plaintiff did not work | | |
| 10/7/2018 | 56.25 | 16.25 | (40 x $20.00) + (16.25 x $30.00) = $1,287.50 | 3226 | $1,287.50 |
| 10/14/2018 | 31 | 0 | 31.00 x $20.00 = $620.00 | 3240 | $620.00 |
| 10/21/2018 | 30.25 | 0 | 30.25 x $20.00 = $605.00 | 3256 | $635.25 |
| 10/28/2018 | 63.75 | 23.75 | (40 x $20.00) + (23.75 x $30.00) = $1,512.50 | 3258 | $1,512.50 |
| 11/4/2018 | 24.50 | 0 | 24.5 x $20.00 = $490.00 | 3273 | $490.00 |
| 11/11/2018 | 29.75 | 0 | 29.75 x $20.00 = $595.00 | 3278 | $595.00 |
| 11/18/2018 | 30.00 | 0 | 30.00 x $20.00 = $600.00 | 3294 | $600.00 |
| 11/25/2018 | 44.50 | 4.50 | (40 x $20.00) + (4.50 x $30.00) = $935.00 | 3306 | $935.00 |
| 12/2/2018 | 40.20 | 0.20 | (40 x $20.00) + (0.20 x $30.00) = $806.00 | 3311 | $806.53 |
| 12/10/2018 | 48.133 | 8.133 | (40 x $20.00) + (8.133 x $30.00) = $1,044.00 | 3324 | 1,044.00 |
| 12/17/2018 | 37.25 | 0 | 37.25 x $20.00 = $745.00 | 3325 | 745.00 |
| 12/24/2018 | | | Plaintiff Did Not Work | | |
| 12/31/2018 | | | Plaintiff Did Not Work | | |
| 1/7/2019 | | | Plaintiff Did Not Work | | |
| 1/14/2019 | 49.667 | 9.667 | (40 x $20.00) + (9.667 x $30.00) = $1,090.00 | 3376 | $1,090.00 |
| 1/21/2019 | 44.167 | 4.167 | (40 x $20.00) + (4.167 x $30.00) = $925.00 | 3385 | $925.00 |
| 1/28/2019 | | | | 3389 | $1,384.50 |
| 2/4/2019 | | | | 3401 | $1,400.00 |
| 2/11/2019 | 45 | 5 | (40 x $20.00) + (5 x $30.00) = $950.00 | 3413 | $950.00 |
| 2/17/2019 | 36.50 | 0 | 36.50 x $20.00 = $730.00 | 3425 | $690.00 |
| 2/25/2019 | 45 | 5 | (40 x $20.00) + (5 x $30.00) = $950.00 | 3429 | $1,000.00 |
| 3/4/2019 | 48.82 | 8.82 | (40 x $20.00) + (8.82 x $30.00) = $1,064.60 | 3442 | $1,280.00 |

As *Composite Exhibit B* shows, Plaintiff signed and agreed to the hours he worked on a weekly basis. Further, he affirmed that every check that was paid to him was payment in full for his hours. The documents show that Plaintiff was paid for all hours he worked, including all overtime hours he worked. Plaintiff has not come forward with any evidence to show that he worked hours that were not reported, that the deductions (to which he agreed when he signed these documents) were *not* appropriate, or that he worked any hours, let alone overtime hours, that were not compensated.

### D.  Plaintiff Has Not Come Forward with Any Evidence that He Worked More Hours than He Reported and Acknowledged

At his deposition, Plaintiff agreed that documents consisting of *Composite Exhibit B* contain his signature and initials. Plaintiff also testified that he has no evidence of any additional

hours that were not paid. See, e.g., ***Plaintiff's Depo Transcript***, 133:20-20; 134:17-20; 135:9-11; 135:22-25; 136:2-5; 136:7-10; 136:12-15; 136:17-19; 136:23 – 137:1.

In the course of the case, Plaintiff has attempted to create a factual issue with respect to the dates of his employment. However, the evidence clearly shows that Plaintiff did not start working for the Defendants in March of 2018, as Plaintiff claims. Rather, Plaintiff began working for the Defendants at the end of July / beginning of August 2018. See, Declaration of Aharon Atzmi – ***Exhibit A***; See also, ***Composite Exhibit B*** (no time records prior to July 30, 2018); ***Exhibit C***. Further, while he regularly communicated with the Defendant by text messages, there are no text messages with Plaintiff prior to July 31, 2018. See, Declaration of Aharon Atzmi – ***Exhibit A;*** Copies of all Text Messages – ***Exhibit E***. Against this weight of evidence, it is simply not enough for Plaintiff to just say otherwise.

Likewise, to the extent the Plaintiff is attempting to create a factual dispute for the deductions in some days by, now, saying that the deductions were for anything other than for the bona-fide break that it was intended, such attempt fails, because Plaintiff is offering nothing but mere speculation that such deductions were improper. Indeed, he reported his breaks to the Defendants and, then, signed and agreed to each and every deduction before his pay was calculated by the Defendants and acknowledged same.

Other than stating that he did, Plaintiff has not come forward with any evidence that can create a question of fact as to the accuracy of Defendants' records beyond his mere speculation and self-serving statement. Indeed, Plaintiff has not offered any bank records, phone records, text messages, or anything else that *could* support his position – that he worked for the Defendants at any time prior to July 31, 2018. Anyone can say anything, but in the fact of strong documentary evidence by the Defendants, it is simply not enough to argue with it. See, *Estrada v. FTS USA,*

8

*LLC*, No. 1:14-CV-23388-KMM, 2016 U.S. Dist. LEXIS 146819, at *13-14 (S.D. Fla. Oct. 24, 2016) ("The Court need not evaluate every statement Estrada offers in support of his response brief to conclude that he has failed to create a question of fact as to the accuracy of FTS's records. Against strong documentary evidence, Estrada offers testimony that is rife with inconsistencies.") See also, *Carson v. J Curt Inc*., 20 Fla. L. Weekly Fed. D 445 (U.S. N.D. Fla. 2007) (granting summary judgment in favor of the employer where an employee did not provide any evidence to refute the employer's time records other than his own testimony)

**b.** **Plaintiff's Unlawful Retaliation Claims**

"Section 215(a)(3) of the FLSA makes it unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint . . . under or related to this chapter." See, *Urzola v. Thumbelina Learning Ctr. Corp.*, No. 12-20767-CIV-, 2012 U.S. Dist. LEXIS 121867, at *13 (S.D. Fla. Aug. 27, 2012). "To analyze FLSA retaliation claims, courts use "the familiar *McDonnell Douglas* framework applied to retaliation claims under Title VII, the ADEA and the ADA." Id. (citing *Suchite v. Kleppin,* 819 F. Supp. 2d 1284, 1293 (S.D. Fla. 2011)) In order to establish a prima facie case of retaliation under §215(a)(3), plaintiff must demonstrate that (1) he engaged in activity protected under the Act; (2) he suffered adverse action by the employer, and (3) a causal connection existed between the employee's activity and the adverse action. See, *Ramos v. Collins & 74th St., Inc.*, 2008 U.S. Dist. LEXIS 57381, 9 (S.D. Fla. July 18, 2008) (citing *Wolf v Coca-Cola Company*, 200 F.3d 1337, 1342-43 (11th Cir. 2000)). "If the defendant is able to present a valid reason for terminating the plaintiffs' employment, then the plaintiff may attempt to show that the proffered reason is pretextual in nature." *Id*. "Furthermore, in demonstrating causation, the

plaintiff must prove that the adverse action would not have taken place "but for" the assertion of FLSA rights." *Id.* (citing *Reich v. Davis*, 50 F.3d 962, 965-66 (11th Cir. 1995)).

"To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." See, *Vignoli v. Clifton Apt., Inc.*, 2014 U.S. Dist LEXIS 149286, at \*16 (S.D. Fla. October 2, 2014) (citing *Jackson v. B&L Disposal, Inc., 425 F. App'x 819, 821 (11th Cir. 2011)).* "[u]nder Eleventh Circuit precedent, a plaintiff satisfies the causation element by providing sufficient evidence that the decision-maker had knowledge of the protected activity and that there was a close temporal proximity between this awareness and the adverse action." *Id.* (citing *Higdon v. Jackson,* 393 F.3d 1211, 1220 (11th Cir. 2004)). "If there is a substantial delay between the protected expression and the adverse action[,] in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." *Id.*

While the Plaintiff would argue that the Court should look at the most recent incident (immediately before his termination) for causation purposes, this argument is not availing because the Court is ought to look at when the alleged complaints started (when the employer first gained knowledge of them) and not that last instances. In *Vignoli,* Plaintiffs attempted to make the same argument, rejecting it, the court explained:

> "As set forth above, Defendants terminated Plaintiffs in March 2012, approximately six to seven years after William Vignoli first complained to Defendants about not being paid a salary. **Plaintiffs ask this Court to focus on the two to three month temporal proximity between their January 2012 complaints and their March 2012 termination**. **We must reject Plaintiffs' argument, however, because 'we begin our calculation on the date the employer gains 'knowledge of the protected expression[.]'**"

See, *Vignoli*, Id., at \*18-19 (citing *Raspanti v. Four Amigos Travel, Inc.*, 266 F. App'x 820, 823 (11th Cir. 2008)) (emphasis added)

Here, likewise, in trying to establish temporal proximity to his termination on March 8, 2019, Plaintiff is stating that he "always" complained about unpaid overtime. However, the Court should reject such basis as a basis for finding of temporal proximity because, even according to Plaintiff, as discussed below, the Defendants first "gained knowledge" of his complaints no later than in August of 2018 (March, 2018 according to Plaintiff) – about seven months before he was terminated.

Specifically, here, Defendants have denied that Plaintiff ever complained about not receiving his overtime pay. See [*DE #25, ¶54*] However, according to Plaintiff, he complained to the Defendants about not being paid overtime since he began working for the Defendants. Thus, even if *Plaintiff's testimony* is taken as true, *at the very latest[1]*, his *first* alleged complaints about unpaid overtime took place in August of 2018 – when the records show that he began working for the Defendants – and again in September, 2018, and was complaining about it always. Indeed, Plaintiff admitted so himself:

> **Q:** **Did you complained [sic.] about not being paid overtime in August of 2018?**
>
> A:     Yes.
>
> **Q:** **And you did the same thing in September of 2018, right?**
>
> A:     Always. Yes, always.
>
> See, ***Plaintiff's Depo Transcript***, 62:21 – 63:2

To be sure, according to Plaintiff, he complained more than 20 times to the Defendants about not being paid overtime:

> **Q:** **Okay. Did you complaint about it [sic.] not being paid overtime more than five times during your employment with the Defendant?**

---

[1] Plaintiff claims that he started complaining about it in February, 2018 – mysteriously one month *prior to* his phantom alleged start time of March, 2018. See, ***DE #23***, at Paragraphs 45, 54 – further evidencing the murky and deceitful nature of Plaintiff's allegations.

A:       Yes, sir.

**Q:       Did you complain about not being paid overtime more than 10 times while working for the Defendants?**

A:       Yes, sir.

**Q:       Did you complain more than 20 times about not being paid overtime while working for the Defendants?**

A:       Yes, sir.

See, ***Plaintiff's Depo Transcript***, 61:7-16

As stated above, while there is disagreement as to when Plaintiff started working for the Defendants, there is no dispute that, at the latest, even if the Court is taking Plaintiff's testimony in the light most favorable to Plaintiff, he started working for the Defendants at the end of July, 2018 and received his first pay at the latest, at the beginning of August, 2018. Thus, if Plaintiff's testimony is taken as true, the *first time* the Defendants would have become aware of his alleged complaints about unpaid overtime was, at the latest, in early August 2018, and he complained about it several times thereafter. Plaintiff did not suffer any adverse employment decision until the following March.

Plaintiff was terminated on March 8, 2019. See, ***Plaintiff's Depo Transcript***, 64:21-23. Therefore, at a minimum, if Plaintiff is to be believed, there is a gap of at least about seven (7) months between Plaintiff's first of many complaints about unpaid overtime and his termination.

As in *Vignoli*, such time gap between the events is too wide for the acts to be sufficiently related to show that, "but for" Plaintiff's Complaints about unpaid overtime, he would not have been terminated. *Vignoli,* 2014 U.S. Dist LEXIS 149286, at *19. See also, *Raspanti v. Four Amigos Travel, Inc.*, 266 F. App'x at 823 (finding that termination seven months and three weeks was "too remote to her protected activity to establish causation based on temporal proximity"); *Higdon v. Jackson*, 393 F.3d 1211, 1221 (11th Cir. 2004) ("By itself, the three month period

between the September 29 letter and the December 31 incident does not allow a reasonable inference of a causal relation between the protected expression and the adverse action.")

"In demonstrating causation, the plaintiff must prove that the adverse action would not have been taken 'but for' the assertion of FLSA rights." See, *Banegas v. One Two Tree, Inc.*, No. 10-20090-CIV, 2010 U.S. Dist. LEXIS 81994, at *15 (S.D. Fla. Aug. 12, 2010) (citing *Reich v. Davis*, 50 F.3d 962, 965-66 (11th Cir. 1995)) Consequently, as a matter of law, Plaintiff has failed to come forward with a prima facie case of unlawful retaliation under the FLSA.

However, even assuming, *arguendo*, that the Plaintiff did sufficiently prove a prima facie case for retaliation, Defendants have explained, and Plaintiff admitted, that the reason he was terminated on March 8, 2019 was for insubordination the previous day, negating any argument of pretext:

> **Q:     Did he tell you on the 8th when you came to his house with Alex, with Marcos and with Franco, did he tell you anything else?**
>
> A:     No, he just insulted me. He said things to me and told me I wasn't going to work for him anymore
>
> **Q:     But he just summarily just threw you out of the house?**
>
> A:     Exactly.
>
> **Q:     Didn't explain to you why. Just, you're a dog, you son of a bitch and get out of my house?**
>
> A:     He told me that the reason he was firing me was because I ignored him the day before.
>
> **Q:     You ignored him the day before?**
>
> A:     Yes.
>
> See, ***Plaintiff's Depo Transcript***, 80:24 – 81:12.

"To establish pretext, the plaintiff must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherences or contradictions in the employer's reasons for its actions that a

reasonable   fact   finder   could   find   them   unworthy   of   credence.'" See, *Perez v. Garcia*, No. 15-20615-CIV-O'SULLIVAN, 2016 U.S. Dist. LEXIS 180301, at *25 (S.D. Fla. Dec. 30, 2016) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)) "[A] plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, so long as the reason is one that might motivate a reasonable employer." *Id*. (citing *Clark v. Alabama*, 141 F. App'x 777, 788 (11th Cir. 2005)) "[A] reason is not pretext for discrimination unless it is shown both that the reason was false and that discrimination was the real reason." *Id*. at *26 (citing *Lee v. U.S. Steel Corp*., 450 Fed. Appx. 834, 839 (11th Cir. 2012)) Here, Plaintiff admitted that he was told that the reason for his termination was insubordination the previous day and further admitted that he was insubordinate the previous day. Therefore, he cannot establish that the reason proffered by the Defendants was false. Further, Plaintiff has not provided any evidence that discrimination was the real reason. Indeed, according to him he started complaining about unpaid overtime months and months before he was terminated without any retaliation until March 8, 2019. Therefore, Plaintiff has failed to present any evidence to suggest that the reason provided by the Defendants for his termination was pretext and Defendants are entitled to summary judgment on the issue of retaliation.

c.    **Plaintiff's Claim Pursuant to 26 U.S.C. §7434**

"Section §7434 provides that '[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return.'" See, *Seijo v. Casa Salsa, Inc.*, No. 12-60892-Civ, 2013 U.S. Dist. LEXIS 167205, at *23 (S.D. Fla. Nov. 25, 2013) "To establish a claim of tax fraud under 26 U.S.C. §7434, Plaintiff must prove (1) that

Defendants issued an information return; (2) that the information return was fraudulent; and (3) that Defendants willfully issued a fraudulent information return." *Id*. (citing *Pitcher v. Waldman*, 2012 U.S. Dist. LEXIS 152087, 2012 WL 5269060, at * 4 (S.D. Ohio Oct. 23, 2012))

 Here, Plaintiff can only prove, and the record shows only evidence that can support, the first element. However, the irrefutable evidence shows that the second and third elements cannot be met.

 "For a return to be 'fraudulent,' it must be inaccurate—i.e., it must contain some false statement of fact." See, *Sigurdsson v. Dicarlantonio*, No. 6:12-cv-920-Orl-TBS, 2013 U.S. Dist. LEXIS 199976, at *23 (M.D. Fla. Dec. 11, 2013) (citing *Cavoto v. Hayes*, 106 A.F.T.R.2d 2010-5140, 2010 U.S. Dist. LEXIS 66017, 2010 WL 2679973, at *4 (N.D. Ill. July 1, 2010)) Here, as demonstrated below, the information returns were completely accurate for 2019, and virtually accurate for 2018 (save for a *de minimus* 25-cent over-reporting). "Mere error, however, is not enough to establish fraud." *Id*. at *27 (citing *Cavoto v. Hayes*, 2010 U.S. Dist. LEXIS 66017, 2010 WL 2679973, at *4) "Plaintiff must also prove fraudulent intent. As a general matter, tax fraud requires 'intentional wrongdoing,' and essential to that intent is 'some element of concealment or deception.'" *Id*. (citing *Cavoto*, 2010 U.S. Dist. LEXIS 66017, 2010 WL 2679973, at *4. "In other words, Plaintiff must prove that the defendant knew the information reported was false but reported it anyway in order to deceive the IRS or harass the plaintiff." *Id*. (citing H.R. Rep. No. 104-506, at 35; *Rossmann v. Lazarus*, 2008 U.S. Dist. LEXIS 68408, 2008 WL 4181195, at *6 (E.D. Va. Sept. 3, 2008))

 Here, Plaintiff has not, and cannot make such showing, given that the only discrepancy in his information returns for two years is a miniscule 25-cent error.

Plaintiff's 1099 MISC Forms for the years 2018 and 2019 are attached as ***Composite Exhibit F***. Plaintiff's checks are part of ***Composite Exhibit B***. These are all of Plaintiff's checks throughout Plaintiff's employment. Plaintiff did not receive any other payment, in any other form, from the Defendants during his employment with the Defendants.

The following table compares the checks for each year with the 1099 MISC Form provided to Plaintiff for that year:

| PLAINTIFF'S 2018 CHECK SUMMARY | | | |
|---|---|---|---|
| Week of | Check Date | Amount | Check No. |
| July 29, 2018 | August 6, 2018 | $1,100.00 | 3127 |
| August 5, 2018 | August 13, 2018 | $410.00 | 3133 |
| August 12, 2018 | August 20, 2018 | $950.00 | 3145 |
| August 19, 2018 | August 28, 2018 | $465.00 | 3159 |
| August 26, 2018 | September 1, 2018 | $551.25 | 3165 |
| September 2, 2018 | September 10, 2018 | $875.00 | 3187 |
| September 9, 2018 | September 18, 2018 | $475.00 | 3194 |
| September 16, 2018 | September 24, 2018 | $680.00 | 3189 |
| September 23, 2018 | None | None | None |
| October 7, 2018 | October 15, 2018 | $1,287.50 | 3226 |
| October 14, 2018 | October 23, 2018 | $620.00 | 3240 |
| October 21, 2018 | October 29, 2018 | $635.00 | 3256 |
| October 28, 2018 | October 31, 2018 | $1,512.50 | 3258 |
| November 4, 2018 | November 12, 2018 | $490.00 | 3273 |
| November 11, 2018 | November 19, 2018 | $595.00 | 3278 |
| November 18, 2018 | November 26, 2018 | $600.00 | 3294 |
| November 25, 2018 | December 3, 2018 | $935.00 | 3306 |
| December 2, 2018 | December 10, 2018 | $806.53 | 3311 |
| December 9, 2018 | December 17, 2018 | $1,044.00 | 3324 |
| December 16, 2018 | December 22, 2018 | $745.00 | 3325 |
| December 23, 2018 | None | None | None |
| December 30, 2018 | None | None | None |
| | | **$14,776.78** | |

Plaintiff's Form 1099 for 2018 reported $14,777.03 – over-reporting the actual amounts he received that year by $0.25 – a *de minimus* difference that Defendants propose cannot support a finding of fraud or intent.

In 2019, there was no difference between the amounts paid and amounts reported:

| PLAINTIFF'S 2019 CHECK SUMMARY CHART | | | |
|---|---|---|---|
| **Week of** | **Check Date** | **Amount** | **Check No.** |
| January 7, 2019 | None (out of town) | None (out of town) | None (out of town) |
| January 13, 2019 | January 21, 2019 | $1,090.00 | 3376 |
| January 20, 2019 | January 28, 2019 | $925.00 | 3385 |
| January 27, 2019 | February 4, 2019 | $1,384.50 | 3389 |
| February 3, 2019 | February 11, 2019 | $1,400.00 | 3401 |
| February 10, 2019 | February 18, 2019 | $950.00 | 3413 |
| February 17, 2019 | February 25, 2019 | $690.00 | 3425 |
| February 24, 2019 | March 4, 2019 | $1,000.00 | 3429 |
| March 3, 2019 | March 8, 2019 | $1,280.00 | 3442 |
| | | **$8,719.50** | |

Plaintiff's Form 1099 for 2019 reported $8,719.50 in income for the Plaintiff – the exact amount he received from the Defendants.

Plaintiff has not come forward with **any** evidence to show that the amounts of money he received from Defendants were different than the amounts of money reported on the information returns, other than through his self-serving and unsupported anticipated statement – that he worked for the Defendant prior to July 31, 2018 and received cash for the work. Indeed, Plaintiff admitted at his deposition that he does not have any evidence to show that the amounts he received were different than the amounts reported to him on the IRS Forms 1099 for 2018 and 2019:

> **Q:** **This is the IRS 1099 that you received from Superior Restoration Cleaning and Services correct, for the year 2018?**
>
> A:     Correct.

> **Q:**     **Do you have any evidence that you received a different amount from Superior Restoration Cleaning and Services for 2018?**
>
> A:     No.
>
> **Q:**     **Exhibit 10 is your 2019, the 2019 form, 1099 that you received from Superior Restoration Cleaning and Services, right.**
>
> A:     Correct.
>
> **Q:**     **Do you have any evidence that you received any different amounts from Superior Restoration Cleaning and Services in 2019?**
>
> A:     No.

See, *Plaintiff's Depo Transcript*, 143:1-20

As discussed in the sections above, Plaintiff has not supported his phantom statements – that he worked prior to July 31, 2018 *or* that he was paid in cash – with any evidence whatsoever: phone records, deposit records, text records, or anything else that could help him go beyond mere argument with clear and proven facts that negate his claim for violation of 26 U.S.C. §7434.

**d.     Plaintiff's Claim Pursuant to Florida Whistleblower Act**

As stated in the attached Declaration, supported by a copy of all checks demonstrating all payments made by the Defendants to their workers (and other vendors,) the entity Defendant did not have 10 or more workers (however defined) working for it during the Years 2018 and 2019. Specifically, in the year 2018, there were only 5 weeks in which 10 or more checks were provided to workers. Further, in 2019, there were 9 weeks in which 10 or more checks were provided to workers. See, *Declaration of Aharon Atzmi – **Exhibit A***.

Fla. Stat. 448.101 defines "Employer" as follows:

**(3)** "Employer" means any private individual, firm, partnership, institution, corporation, or association that employs ten or more persons.

See, Fla. Stat. §448.101.

Thus, even if the Court were to consider all such workers as "employees" under the statute, there would still not be a material fact as to the amount of such workers that were paid by company checks on an IRS Form 1099 – Defendant did not have sufficient amount of workers for twenty weeks or more in 2018 or 2019.

Thus, it is (they are) entitled to summary judgment in their favor as to Plaintiff's Florida Whistleblower Act.

Further, the individual Defendant is entitled to summary judgment as this claim because claims pursuant to the Florida Whistleblower Act are limited to the entity employer, and not to supervisors. "Florida's Whistleblower Act defines both supervisor and employer." See, *Dunford v. Rolly Marine Serv. Co.*, 18 Fla. L. Weekly Fed. D 454 (U.S. S.D. Fla. 2005) (citing *Fla. Stat. §448.101(6)* and *§448.101(3)*, respectively). Further, "[U]nder the Florida Whistleblower Act, the employee must bring the complained about activity to the attention of a supervisor or the employer." *Id*. (citing *Fla. Stat. §448.102(2)).* "However, the statute only prevents an employer from taking retaliatory action against an employee." *Id*. (citing Fla. Stat. §448.102) and the Court should not expand the definition of "employer" to analogize it to the definition of "employer" under the FLSA. which would include a "supervisor" because it would be tantamount to rewriting the statute, which is unambiguous in its definition of the term "employer." *Id*. See also, *Tracey-Meddoff v. J. Altman Hair & Beauty Ctr., Inc*., 899 So. 2d 1167, 1168 (Fla. 4th DCA 2005) ("The act imposes statutory liability only on an 'employer' as defined in section 448.101(3), which includes a corporation that employs ten or more persons. To extend liability under the act to officers, directors, or shareholders of such a corporation is to rewrite the statute. This court does not have the power to 'construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications.'")

19

For these reasons, Plaintiff's claim for violation of the Florida Whistleblower Act fails as a matter of law.

<b><u>CONCLUSION</u></b>

For the above-stated reasons, Defendants respectfully request that this Court enter an Order granting their Motion for Summary Judgment as to Plaintiff's overtime claim, as to Plaintiff's retaliation claim, as to Plaintiff's claim pursuant to 26 U.S.C. §7434, and as to Plaintiff's claim pursuant to the Florida Whistleblower Act, and any such other relief as the Court deems just and proper.

Respectfully submitted, this 27th day of February, 2020.

ADI AMIT, P.A.
*Attorneys for Defendants*
101 Centre
101 NE Third Avenue, Suite 300
Fort Lauderdale, Florida 33301
Phone: (954) 533-5922
E-mail: Adi@DefenderOfBusiness.com

By: *s/Adi Amit*
    Adi Amit, Esquire
    Florida Bar No. 35257

<b><u>CERTIFICATE OF SERVICE</u></b>

I HEREBY CERTIFY that on February 27, 2020, I electronically filed the foregoing document with the clerk of the court using CM/ECF.  I also certify that the foregoing document is being served this day to all persons on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:___/s Adi Amit_____
    Adi Amit, Esquire
    Florida Bar No: 35257

## <u>SERVICE LIST</u>

***Rivera v. Superior Restoration & Cleaning Services, Inc., et al***
Case No. 0:19-cv-61700-FAM

Hazel Solis Rojas, Esq.
Law Office of Hazel Solis Rojas, P.A.
3105 NW 107 Ave., Suite 400
Doral, FL 33172
hazel@solisrojaslaw.com
*Co-Counsel for Plaintiff*

Barbra Anne Stern, Esq.
Law Office of Barbra Stern, P.A.
808 E Las Olas Blvd. Suite 102
Ft. Lauderdale, FL 33301
barbra@sterncnslt.com
*Co-Counsel for Plaintiff*

Adi Amit, Esq.
ADI AMIT, P.A.
101 Centre
101 N.E. Third Avenue
Suite 300
Fort Lauderdale, Florida 33301
Adi@DefenderOfBusiness.com
*Counsel for Defendants*